*In re* KACHULA'S ESTATE.

1. MARRIAGE—COMMON LAW—EVIDENCE.

Where man and woman maintained relationship of husband and wife continuously for period of 7 years there was evidence of the existence of a present agreement to live together in such relation.

2. SAME—COHABITATION—COMMON LAW.

Cohabitation of a man and woman, sufficient to establish a common-law marriage, means dwelling together, living in the usual manner of married people, a manifestation that parties have consented between themselves to contract the marriage relation, a holding forth to the world by daily life, conduct, demeanor, habit, that the man and woman so living together have agreed to marriage and to stand to each other in the mutual relation of husband and wife.

3. SAME—EVIDENCE.

Evidence supported finding of trial court that petitioner for administration of deceased's estate was his widow by virtue of a common-law marriage.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 6, 1949. (Docket No. 24, Calendar No. 44,255.) Decided May 18, 1949.

In the matter of the estate of Peter P. Kachula, deceased. Josephine Kachula, wife, filed petition for administration. Andrew Kachula also filed petition. Petition of Josephine Kachula granted and

REFERENCES FOR POINTS IN HEADNOTES

[1] 35 Am. Jur., Marriage, § 220.
[2] 35 Am. Jur., Marriage, § 29.
[2] Validity of common-law marriage in American jurisdictions. 39 A.L.R. 538; 60 A.L.R. 541; 94 A.L.R. 1000; 133 A.L.R. 758.

other denied. Andrew Kachula appealed to circuit court. Order of probate court affirmed. Andrew Kachula appeals. Affirmed.

*Selwa, Dixon & Mackey* and *J. C. Dysarz,* for Josephine Kachula.

*Davidson & Theut* and *Roy A. McGinty,* for Andrew Kachula.

REID, J. This is an appeal from an order of the circuit court which affirmed an order of the probate court determining that Josephine Kachula is the widow of deceased, Peter P. Kachula.

Josephine Kachula, designating herself as the widow of deceased, filed a petition for administration. A petition was also filed by Andrew Kachula, brother of deceased, in which Andrew Kachula recited he was the only heir-at-law of deceased and petitioned that he be appointed administrator of the estate. Testimony was taken in the probate court on the hearing of the 2 petitions. On January 22, 1946, the probate court entered an order denying the petition by Andrew Kachula, and also entered an order adjudging that Josephine Kachula "is the widow and an heir-at-law of the deceased." From the latter order, an appeal was taken to the circuit court. On January 7, 1948, the circuit court made an order adjudicating that Josephine Kachula was the lawfully-wedded wife of Peter Kachula. From the order of the circuit court, the brother Andrew Kachula appeals.

The matter at issue between the parties was as to Josephine Kachula being the common-law wife of deceased.

Various witnesses testified to statements of the deceased made in the presence of Josephine Kachula

that they were husband and wife and were living together as such.

Lawrence Poloncke, a disinterested witness who knew both Josephine and Peter Kachula for 20 years, testified:

"They lived together. Peter lived with her from 1938. I live in one room and both of them lived together in the same room, Pete and Josephine from 1938.

"*Q.* How did he introduce Mrs. Kachula?

"*A.* He called her 'wife' and treated her best he can and she treated him pretty good and he treat her good.

"They lived together and slept together right up to the time he died. Sometimes I went to parties with Mr. and Mrs. Kachula, and sometimes went to a show with them. To the people in the neighborhood, to all of his friends and relatives, Peter called Josephine his wife, in front of everyone that met him, called her wife, always 'my wife,' nothing else."

Frank Kassian, a friend of deceased since 1915, testified:

"When I visited them again the other time when they got together and he presented himself and says: 'I am living together with Josephine as husband and wife.'

"*Q.* Was that said to you in the presence of Josephine?

"*A.* In front of her.

"*Q.* What did Josephine say?

"*A.* She smiled.

"*Q.* What did you say?

"*A.* I smiled.

"*Q.* From that time on what did they do and say that made you think they were married, husband and wife?

"*A.* I congratulated them and we had a little dinner and talked. * * * They first told me in 1938 that they were living as husband and wife. Perhaps

a few days or months before that date. I don't remember dates. I thought when they said they were married, I thought they meant from maybe a few days or months before that date and that year, 1938 when they told me, we celebrated."

Alfred E. Judd testified:

"I am employed at Ford Hospital in charge of the clinical records. I have a clinical record of Peter Kachula. On the line calling for the name which reads Kachula, P. P. (wife, Josefa), that was signed by Peter Kachula."

Jennie Giera testified:

"I lived right in the same house with Mr. and Mrs. Kachula on Thirty-first street on the same floor. They lived in the front apartment and I lived in the rear apartment, for around 3 years. I visited them once in a while, and they visited me. Mr. Kachula referred to Mrs. Kachula as his wife all of the time. She referred to him as husband. Mr. Kachula was working all the time. He was sick some of the time when I lived there. When I didn't see him, I asked Mrs. Kachula about him, and she says: 'My husband is sick and won't be able to go to work.' Sometimes she said, 'My husband is working now.' He talked about Mrs. Kachula all the time as his wife, anything that she did he would say, 'My wife did this, or my wife did that.'"

Elizabeth Sielaff, a next-door neighbor of Mr. and Mrs. Kachula for three years, testified:

"Mr. Kachula addressed Mrs. Kachula as his wife, she addressed him as her husband. * * * He was referring to her as his wife, always. As far as I can see they conducted themselves as husband and wife. Mrs. Kachula performed all the duties of a housewife like washing, taking care of the house, and cleaning. Mrs. Kachula referred to him the same way, as her husband. That is the way she always talked to me; as her husband."

The cohabitation as husband and wife continued from 1938 to the death of Peter Kachula, March 6, 1945.

As further evidence of the marriage relationship, testimony was given that in August, 1941, the deceased and Josephine Kachula, together with a real estate agent and Tina Kurtsell, came to the office of Joseph J. Galica, a Detroit attorney, at which time and at the request of Tina Kurtsell, the seller, Galica, the attorney, prepared a deed which appears in the record. Galica testified:

"I asked Peter Kachula, the purchaser, in whose name he wanted the property to be placed, and he answered he wanted it in his name and his wife's name. A lady was there with him. When he said to put his wife's name in there, he motioned to his wife who was sitting there, and that was Josephine Kachula, whose name I inserted in the deed, and pursuant to the instructions, I drew up exhibit 6 [the deed in question]."

In the deed the grantees' names are recited as, "Peter P. Kachula and Josephine Kachula, his wife, of Detroit, Michigan."

The trial judge in his opinion recites:

"I think that the testimony in this case is sufficient to clearly prove that they lived together and held themselves out to be husband and wife. I also think that it is a perfectly just and proper conclusion, from the testimony given, that their living together was the result of an agreement to live together as husband and wife and be such."

In this conclusion of the trial judge we concur. The continuing constancy and maintenance of the honestly-intended relationship as husband and wife during a period of 7 years is evidence of the existence of a present agreement.

In *People* v. *Spencer*, 199 Mich. 395, we say at pages 402, 403:

"Cohabitation in this behalf means dwelling together; living in the usual manner of married people. It is a manifestation that the parties have consented between themselves to contract the marriage relation, a holding forth to the world by daily life, conduct, demeanor, habit, that the man and woman who live together have agreed to marriage and to stand to each other in the mutual relation of husband and wife. *In re Yardley's Estate,* 75 Pa. 207; *Robinson* v. *Robinson,* 188 Ill. 371 (58 N. E. 906); *Campbell* v. *Campbell,* L. R. 1 H. L. Sc. 182."

In *Long* v. *Long,* 217 Mich. 211, we say at page 212:

"The acts of the parties support plaintiff's claim of a common-law marriage. She insured her life and made him, as her husband, beneficiary; he insured his life and made her, as his wife, beneficiary. As husband and wife they made formal adoption of a boy. She joined with him as his wife in executing a mortgage. He made application to the probate court as her husband to have her committed to an asylum. We are fully persuaded that an oral contract of marriage, *per verba de praesenti,* was made between the parties and consummated by cohabitation and amply corroborated by holding themselves out to the public as husband and wife."

The judgment appealed from determined that Josephine Kachula was the lawfully-wedded wife of Peter Kachula. The judgment is affirmed. The cause is remanded to the circuit court with direction to remand it to the probate court for further proceedings. Costs to Josephine Kachula against the appellant Andrew Kachula.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.