IN RE ESTATE OF MARIE WOLFINGER ALLEN, deceased.

KATHERINE PHILLIPS ALTMAN et al., appellants, v. ANDREW B. ALLEN et al., appellees.

No. 49820.

(Reported in 100 N.W.2d 10)

December 15, 1959.

Cross, Hamill & Selby, of Newton, and Abramson & Myers, of Des Moines, for appellants.

Leo J. Lucier, of Des Moines, for appellees.

OLIVER, J.—The question in this case is whether appellee Andrew B. Allen was the common-law husband of Marie Wolfinger Allen who died in Des Moines, Polk County, Iowa, February 27, 1958. Upon Allen's petition, as her widower, he was appointed administrator of her estate and appellee A. L. Wensel was appointed attorney. March 6, 1958, Mrs. Katherine Phillips Altman and Mrs. Charlotte Phillips Hirchak, nieces and heirs-at-law of decedent, made application for the removal of Allen as administrator and Wensel as attorney, on the ground Allen was not the surviving spouse of decedent. Trial to the court resulted in an adjudication Allen was decedent's common-law husband. Hence, the application for his removal as administrator and that of Wensel as his attorney was denied. Decedent's nieces have appealed. Wensel's right to appointment as attorney is not here important and, for convenience, Allen will be referred to as appellee.

This being a proceeding in probate the findings of fact by the trial court have the effect of the verdict of a jury. Therefore our review of the judgment will be limited to determining whether it has substantial support in the evidence properly admitted and to alleged errors in procedure.

I. One such error assigned is: over objection that he was an incompetent witness, under the dead man statute, section 622.4, Code of Iowa, 1958, appellee was permitted to testify: "Q. What is your understanding as to the relationship with her [decedent] since June 20, 1955? A. I felt that I was married to her."

The overruling of the objection was not erroneous. In re Estate of Boyington, 157 Iowa 467, 475, 137 N.W. 949, 952, states: "The purpose and intention of Boyington in his relations with Miss Pond were of the greatest importance as bearing

on the fact of a marriage. No doubt as a witness he would have been incompetent to testify to any transactions or communications with the deceased amounting to a mutual agreement to marry, but he was not incompetent to testify as to his own purposes and intentions and the circumstances under which their cohabitation was begun and continued, * * *."

In re Estate of Wittick, 164 Iowa 485, 489, 490, 145 N.W. 913, 915, quotes the foregoing statement with approval and states also: "She also testified, and this we think was competent as bearing upon her intent, that from that time on she considered herself to be his wife, and that the formal ceremony should be performed when they could go to the proper church. While much of this testimony is incompetent as being of conversations with the deceased, that to which we have just referred, with other evidence, sheds light upon the intent with which she entered upon and sustained the relations with Wittick which are shown by the evidence."

II. Appellants contend also the question asked appellee was objectionable because it called for his opinion and legal conclusion. This contention is without merit. Whenever the belief, intent or motive of a witness is material he may testify directly thereto. Halligan v. Lone Tree Farmers Exchange, 230 Iowa 1277, 1286, 300 N.W. 551, 556; Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 603, 94 N.W.2d 750, 753, 754; In re Estate of Maurer, 199 Iowa 899, 901, 201 N.W. 327; 32 C. J. S., Evidence, section 510a.

III. The record shows decedent operated the Lloyd Hotel in Des Moines from 1943 until her death. Her first husband, Mr. Wolfinger, died in 1930. In 1936 she contracted a common-law marriage with Mr. Steele. He died in 1952. Thereafter she corresponded with appellee who was then in California. Correspondence from him, apparently kept by her, shows his friendship and, subsequently, his affection for her. In March 1955 at her request appellee returned to Des Moines. He was confined in a hospital in Des Moines, for some time, returned to Lloyd Hotel and from June 20, 1955, openly cohabited with decedent there. This is the date fixed in his testimony from which he felt he was married to her. Soon they took a trip together, registering as husband and wife. Many witnesses testified each of them

introduced or referred to the other as his or her spouse, that their conduct was that of a married couple and they were generally so regarded. This continued until her death.

Further reference to such evidence is unnecessary because appellants concede "there is evidence in this case from which it can be said that Allen and decedent cohabited and were known as husband and wife."

But appellants contend a common-law marriage may not be established without proof there was a present agreement between the parties to take each other as husband and wife, and that such agreement may not be presumed or inferred from their acts and conduct. In support of this contention they refer to statements in various decisions of this court which they contend require the conclusion the absence of direct proof of such agreement is a fatal defect.

We do not disagree with the cited decisions nor with the statements therein as applied to those respective situations but we do disagree with appellants' contention direct proof is necessary to establish such an agreement. Moreover, none of the cases relied upon by appellants is here directly in point, because in the case at bar death and the dead man statute had sealed the lips of the parties to the agreement and apparently there was no available evidence of its terms. In re Estate of Wittick, 164 Iowa 485, 145 N.W. 913, is here in point in that one spouse was dead and the survivor incompetent, under the statute, to testify to the agreement. There the only competent direct evidence bearing upon the terms of the agreement was the testimony of the survivor (substantially the same as in the case at bar), "that from that time on she considered herself to be his wife." In holding the evidence established a common-law marriage the court quoted with approval (page 493 of 164 Iowa) from In re Estate of Boyington, 157 Iowa 467, 470, 137 N.W. 949: "* * * the fundamental question is whether their minds have met in mutual consent to the status of marriage which will be sufficiently established if it appears that they have lived together, intending thereby to be husband and wife."

In re Estate of Stopps, 244 Iowa 931, 934, 57 N.W.2d 221, 222, refers with approval to the Wittick case, stating: "* * *

there was a full discussion of the facts required to prove the common-law marriage status, and a holding that they had been so proven."

Appellants state the Michigan courts have followed the rule that the marriage contract must be established by direct evidence. In re Estate of Kachula, 324 Mich. 725, 729, 37 N.W.2d 574, 576, in which there was no direct evidence of the agreement of the parties, adjudged a common-law marriage had been proven, stating: "The continuing constancy and maintenance of the honestly-intended relationship of husband and wife during a period of seven years is evidence of the existence of a present agreement."

The text in 35 Am. Jur., Marriage, section 207, states: "The general rule unquestionably is that circumstantial evidence is always competent, and may be sufficient, proof of marriage. Proof of marriage by cohabitation and reputation is a form of circumstantial proof. Where there is direct evidence readily available, such evidence should be used, but there is authority for the rule that circumstantial evidence may be relied on although direct evidence is readily available. Nevertheless, if available direct evidence is not used, but circumstantial evidence is relied on, such fact militates strongly against the party offering it."

In 35 Am. Jur., Marriage, section 220, at page 327, it is stated:

"* * * The practical application of the evidential doctrine that marriage may be inferred or presumed from the conduct of the parties and their standing in the community yields few general working rules. Each case presents its own problem. The joint history of the parties must be minutely examined, weighing a word here, construing an act there, to ascertain just what was the understanding of the parties—the ultimate test in each instance. Nevertheless, since the law favors marriage, it is the inclination of the courts, where the shadow cast by the daily lives of the parties shows nothing of the lewd or the impure, where their acts and words do not conceivably differ from what is to be expected of married persons, and where they have been accepted by society as husband and wife, to accord them that status."

Decisions of various courts are cited in support of the following statement in 55 C. J. S., Marriage, section 45a(4)(a), page 908:

"Independent of any direct or documentary evidence, and at least where it is impossible to establish marriage by the testimony of the contracting parties or those present at the time of the mutual agreement, a marriage may be circumstantially established by the fact that a man and woman have for a considerable period of time openly cohabited as husband and wife and recognized and treated each other as such, so that they are generally reputed to be married among those who have come in contact with them. Such circumstances justify a finding that at the commencement of the cohabitation the parties actually entered into a marriage."

Markley v. Hudson, 143 Ohio St. 163, 167, 54 N.E.2d 304, 306, states:

"* * * This court still adheres to the doctrine that it is essential to show an agreement between the parties *in praesenti* to become husband and wife in order to establish a common-law marriage, but this does not mean that such proof must establish an express agreement resulting in contract, or that such result may not be established by circumstances from which an agreement *in praesenti* may be inferred."

We hold the finding of the trial court that appellee was the common-law husband of decedent is supported by substantial evidence. Therefore, it may not be set aside by this court, upon appeal.

IV. After the submission of the case the court made findings of fact and conclusions of law to the effect that appellee had established his common-law marriage to decedent. Thereafter appellants filed motion to alter, change, enlarge and amend the findings of fact and conclusions of law. This motion was based upon the fact that the record showed appellee had been previously married and was silent as to whether that marriage was ever terminated by death or divorce.

The record shows the question of the termination of appellee's prior marriage was not actually a contested issue. Before the trial, counsel for appellants had taken appellee's deposition for the purpose of discovery and in answer to their

questions he had testified his prior marriage had been terminated by divorce in 1946 or 1947. In the trial, counsel for appellants did not touch upon this proposition and appellee was not asked and did not testify about the divorce. Evidently this was due to oversight of his counsel.

During the trial his deposition was identified and marked as an exhibit, but was not offered in evidence. Moreover, in preparation for the trial, the judge had secured and studied the files in the case, in which the deposition had been placed, and had read the deposition. Evidently the trial court concluded the interests of justice would not be best served by permitting the case to be finally submitted without affording appellee an opportunity to offer evidence of his divorce.

After the hearing on the motion it was ordered "on the Court's own motion", that the trial be reopened for the purpose of permitting the introduction of evidence upon the question whether appellee was an unmarried person on and immediately prior to June 20, 1955. Thereafter appellee testified, as he had previously testified in his deposition, that his former wife had secured a divorce from him. The record shows this divorce was decreed by the district court of Boone County, Iowa, November 16, 1946.

Appellants predicate error upon this procedure. They contend it is contrary to R. C. P. 192, which provides: "Further testimony for mistake. At any time before final submission, the court may allow any party to offer further testimony to correct an evident oversight or mistake, imposing such terms as it deems just." This rule and the similar statute which preceded it have been frequently considered by this court.

Mealey v. Scott, 242 Iowa 787, 791 to 793, 48 N.W.2d 262, 265, was a law cause tried to the court. In that case after findings of fact and conclusions of law had been made, the court, upon motion of a party, ordered the case reopened and received additional evidence. Upon appeal this court held this was not error, stating: "We have held many times that in permitting the reopening of a case to permit the introduction of evidence overlooked or omitted by mistake a wide discretion rests in the trial court." Many supporting decisions are cited. Some other recent decisions are: Dobler v. Bawden, 238 Iowa 76, 84, 85,

25 N.W.2d 866, 871; Union Bank & Trust Co. v. Willey, sheriff, 237 Iowa 1250, 1270, 24 N.W.2d 796; Sullivan v. Sullivan, 244 Iowa 838, 844, 56 N.W.2d 910, 913.

Appellants complain also that the deposition of appellee had been placed in the case file where it was open to inspection and reading. They point to provisions of R. C. P. 144 that the use of such deposition is limited and of R. C. P. 152 that the officer taking it shall seal it in an envelope and file it with or send it to the clerk. However, they must have known it had been in the case file when they joined in a stipulation that Exhibit 6-a was the envelope and Exhibit 6 was the deposition. If they believed it improper to keep the deposition in the case file they should have made objections at that time.

We conclude the order of the trial court reopening the case was not an abuse of the discretion lodged in it in such matters. The contention of appellee that the burden was upon appellants to show the prior marriage was not terminated need not be determined. Appellee's motion to dismiss the appeal for the asserted failure of appellants to comply with the Rules of Civil Procedure is overruled.

The judgment is affirmed.—Affirmed.

All JUSTICES concur.