IN RE ESTATE OF HARRIETTE M. BARTLETT LONG.

THOMAS M. LONG, appellant, v. GURDEN S. BARTLETT, appellee.

No. 49953.

(Reported in 102 N.W.2d 76)

April 5, 1960.

Rehearing Denied June 17, 1960.

McManus & McManus, of Keokuk, for appellant.

Charles P. Beard, of Keokuk, for appellee.

PETERSON, J.—There is only one important question in this case. It is primarily a question of fact. Were Thomas M. Long and Harriette M. Bartlett husband and wife, either by ceremonial or common-law marriage at the time of her death on June 14, 1956?

She died intestate. Shortly after her death Thomas M. Long made application for appointment as administrator, filing the application under the name of Harriette M. Bartlett Long and claiming in the petition he was her surviving husband. Letters of administration were issued to him on June 25, 1956.

On January 7, 1959, Gurden S. Bartlett, decedent's brother and only heir, filed application in the probate proceeding alleging there had never been any marriage between his sister and Thomas M. Long. He prayed that the court determine what interest, if any, Thomas M. Long has in her estate. Mr. Long filed answer thereto alleging marriage between him and decedent and denying all other allegations in the application and an amendment filed later.

A motion to dismiss was filed and overruled. Appellant now claims he should have been granted a jury trial. There is no basis for this claim in this court. We will consider the question later.

The trial court decided in favor of applicant, decedent's brother. Respondent has appealed. We will refer to respondent as appellant.

I. We will first consider respondent's contention that he entered into a ceremonial marriage with Harriette M. Bartlett. He testified that in October of 1932 he and Miss Bartlett traveled by automobile from Canton, Missouri, where they were living at that time, to some town near Chicago, Illinois. He states they were there married by a Justice of the Peace. He could not remember the name of the town. He offered no license in evidence. He claimed he had written to a number of towns near Chicago to try to get a copy of the license, but had been unable to do so.

■■■ They drove back toward their home on the same day, and stopped at a tourist home for the night, but he does not remember the name of the town where they stopped. As to his

testimony concerning this matter he was an incompetent witness under section 622.4, 1958 Code of Iowa. Worthington v. Diffenbach, 184 Iowa 577, 168 N.W. 257; In re Estate of Wittick, 164 Iowa 485, 145 N.W. 913; In re Estate of Boyington, 157 Iowa 467, 137 N.W. 949.

The only other evidence in the record in connection with the ceremonial marriage was the testimony of two residents of Keokuk, Iowa. They could not remember the time, but they testified that decedent told them some years ago that she had been married to Thomas M. Long in some town near Chicago. However, in 1946, a long-time friend of decedent testified that she and her husband met decedent one day at Quincy, Illinois. Mr. Long came up to them while they were visiting, and the witness testified that decedent said: " 'Mr. and Mrs. Azinger I want you to meet my boy friend.' "

█ While there is an abundance of evidence, as we will hereinafter outline, as to the parties living together most of the time between 1932 and 1956, there is no other evidence with reference to the occurrence of a ceremonial marriage. In view of Mr. Long's incompetency as a witness and his failure, and that of decedent, throughout many years, to announce any marriage to friends or relatives, the proof as to the existence of a ceremonial marriage is not persuasive. We sustain the position of the trial court in holding that respondent failed to carry the burden of proof as to such a marriage.

II. Many states recognize the validity of common-law marriages, if the proper elements of proof are present. Some states have abolished common-law marriage by statute. Missouri, in which the decedent and the respondent lived up until 1948, abolished such marriage by statute adopted in the year 1921.

█ Iowa has recognized common-law marriage in decisions extending back almost one hundred years. The policy has been reinforced throughout the years by periodical decisions of approval. One of the earlier cases was Blanchard v. Lambert, 43 Iowa 228, 22 Am. Rep. 245. Other decisions of approval are: Our recent cases of In re Estate of Stopps, 244 Iowa 931, 57 N.W.2d 221, and Gammelgaard v. Gammelgaard, 247 Iowa 979, 77 N.W.2d 479. Also see McFarland v. McFarland, 51 Iowa

565, 570, 2 N.W. 269; Leach v. Hall, 95 Iowa 611, 64 N.W. 790; Gibbs v. Farmers & Merchants State Bank, 123 Iowa 736, 99 N.W. 703; Brisbin v. Huntington, 128 Iowa 166, 103 N.W. 144, 5 Ann. Cas. 931; State v. Rocker, 130 Iowa 239, 106 N.W. 645; Pegg v. Pegg, 138 Iowa 572, 576, 115 N.W. 1027; In re Estate of Boyington, In re Estate of Wittick, and Worthington v. Diffenbach, all supra; Reppert v. Reppert, 214 Iowa 17, 241 N.W. 487; State v. Grimes, 215 Iowa 1287, 247 N.W. 664.

Mississippi acknowledges common-law marriage. Its decisions are quite similar to ours. The case of Ladnier v. Ladnier's Estate, 235 Miss. 374, 109 So.2d 338, is almost identical with case at bar. The court denied existence of a common-law marriage. Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826, is a leading common-law marriage case.

■ In general terms common-law marriage is defined in 55 C. J. S., Marriage, section 6, pages 818, 819: "* * * there should be an actual and mutual agreement to enter into a matrimonial relation * * * between parties capable in law of making such a contract * * * consummated by their cohabitation as man and wife or their mutual assumption openly of marital duties and obligations * * *. It has been held that, if any of the essentials of a common-law marriage are lacking, the relationship is illicit and meretricious and is not a marriage."

■ Also see 55 C. J. S., Marriage, section 43a, as follows: "There is no presumption that persons are married. Accordingly the burden of proving a marriage rests on the party who asserts it, particularly where a common-law marriage is asserted."

Also 55 C. J. S., Marriage, section 45b, pages 911–913: "A claim of common-law marriage is regarded with suspicion and will be closely scrutinized. Thus, in order to establish a common-law marriage, all the essential elements of such a relationship * * * must be shown by clear, consistent, and convincing evidence, especially must all the essential elements of such relationship be shown when one of the parties is dead; and such marriage must be proved by a preponderance of the evidence."

■ From consideration of the many Iowa decisions, and of

the principles stated in decisions in many other states, we are outlining the elements and conditions necessary to establish the existence of a common-law marriage: 1. Intent and agreement in praesenti, as to marriage, on the part of both parties, together with continuous cohabitation and public declaration that they are husband and wife. 2. The burden of proof is on the one asserting the claim. 3. All elements of relationship as to marriage must be shown to exist. 4. A claim of such marriage is regarded with suspicion, and will be closely scrutinized. 5. When one party is dead, the essential elements must be shown by clear, consistent and convincing evidence.

In order to consider the weight of the evidence as to common-law marriage we will present a synopsis of the testimony offered by the respective parties.

█ █  III.  The following was offered by respondent. He had the burden. He testified that he and decedent had cohabited together from 1932 until her death in 1956, with two exceptions. He testified:

"Hattie and my mother didn't get along and Hattie came to Keokuk [early in 1933] and stayed in her house [Hattie's] here until my mother died in 1934. After that Hattie * * * came back to Keokuk to do washing and clean up her home here and to cook meals for Gurden."

There is a serious question as to the witness being competent as to the details of such cohabitation in view of section 622.4. See cases cited in Division I.

The trial court reserved ruling on objections as the evidence was being presented. We have held, however, that the witness is competent as to some of such type of evidence in order to show intent. In In re Estate of Wittick, supra (page 489 of 164 Iowa), we said: "Much of the testimony objected to in this case was of conversations between the appellee and Wittick, as to which no other witness had testified, and we think it comes clearly within the rule of the statute, and is incompetent as proving an agreement, but is in part admissible as proof of her intent and the circumstances under which their relations commenced."

Four witnesses testified they had known decedent and respondent in recent years in Iowa, and from their observations they testified the parties lived together as husband and wife.

In Missouri decedent had an auto driver's license issued to her in the name of Harriette Bartlett Long.

A few letters and many Christmas cards were introduced in evidence directed to Mr. and Mrs. Tom Long.

Three health and hospital policies were introduced showing the insured under the name of Harriette Bartlett Long.

An election official testified she voted in Iowa in 1952, 1954 and 1956 under the name of Harriette Long.

IV. The testimony offered by and on behalf of applicant, brother of decedent, was in substance as follows:

Decedent purchased a farm in 1947 and the deed was issued to her under the name of Harriette Mary Bartlett. She also owned a house in Keokuk which stood in her name, but this was apparently purchased before the alleged marriage.

In July of 1950 she purchased ten one-thousand-dollar Series E United States Government bonds under the name of Miss Harriette M. Bartlett. She also owned five one-thousand-dollar Series E United States bonds, which she purchased in September of 1943 under the name of Harriette M. Bartlett.

October 15, 1936, respondent executed a deed to his sister conveying his interest in land in Missouri. The deed stated as to the grantor: "Thomas Long single and unmarried man." The acknowledgment before a notary public stated: "And the said Thomas M. Long further declared himself to be single and unmarried." A similar deed from respondent to his sister with similar wording in the deed and acknowledgment was executed on October 10, 1938.

On September 24, 1951, a real-estate contract was made between "Thomas M. Long unmarried first party and Thomas L. Varner and Alice V. Varner, second parties." The acknowledgment stated: "Personally appeared Thomas M. Long, unmarried."

On September 19, 1955, a real-estate contract of sale was made by "Thomas M. Long, unmarried, first party, and Keith E. Gaibel and Dora V. Gaibel, second parties." The acknowl-

edgment before a notary public, stated: "Personally appeared Thomas M. Long, unmarried."

Thomas M. Long testified he took title in his own name to the farm he sold under contract, because Harriette M. Bartlett refused to sign mortgages with him as his wife, to secure money which he needed to pay part of the purchase price. He signed and acknowledged two mortgages, one in 1947 and one in 1949, as "Thomas M. Long, a single person."

In 1951 a notice was served by the sheriff on behalf of the highway commission on "Harriette Mary Bartlett" as to condemnation of some land listed in her name as owner. She filed a petition appealing from the sheriff's jury appraisal. The case was entitled: "Harriette Mary Bartlett, plaintiff v. Iowa State Highway Commission, defendant." In a stipulation of settlement and a dismissal of the case decedent signed her name as "Harriette Mary Bartlett." The settlement check was made to Harriette Mary Bartlett.

In 1951 decedent filed an ouster suit against a tenant, naming herself as Harriette Mary Bartlett, plaintiff. She verified the petition under said name before a notary public.

In 1952 she filed a suit against Lee County for an injunction to abate a nuisance as to wash water running over on her farm from the County Home, naming herself as plaintiff under her maiden name.

In 1950 decedent made a lease from Harriette Bartlett to Harold Keck and wife. She was defendant under said name in a rent control suit and filed a verified answer signed "Harriette M. Bartlett."

Starting in 1939 and running through 1948 applications for homestead tax credit as to the property she owned in Keokuk, Iowa, were filed as follows: "I, Bartlett, Hattie, being first duly sworn, upon my oath depose and say that I am the owner of a homestead as defined by the Code of Iowa, which is located at 211 South Eighth Street, Keokuk, Iowa, and I intend to occupy said dwelling in good faith as a home. Hattie Bartlett, owner." The application was duly verified before the assessor.

Applicant testified he was the only brother of decedent. He said Mr. Long and his sister came to visit him about every six

weeks and would often stay overnight, but never occupied the same bedroom. Respondent in rebuttal denied this testimony.

A veterinary testified he carried his account for services rendered at the farm where the parties lived under the name of "Long & Bartlett" and mailed statements to them in such form.

The vice president of Keokuk Savings Bank testified decedent's account was carried under the name of "H. M. Bartlett" and it averaged from three to five checks a month. On February 20, 1950, decedent rented a safe-deposit box in the bank under the name of "H. M. Bartlett." The bank records indicated entry to her box seven times from May 13, 1950 to February 26, 1952, under entry cards signed "H. M. Bartlett." She surrendered the box on February 26, 1952.

Four insurance agents testified as to issuing policies on decedent's property in Keokuk. Applications were signed and policies issued to "Harriette M. Bartlett, H. M. Bartlett or Harriette Bartlett." The last policy was issued on April 6, 1956, about two months before her death.

Decedent's father died in 1937 in Keokuk. She was listed as an heir under the name of "Hattie Mary Bartlett." She signed a receipt for her share in the estate in 1939 under said name.

On January 24, 1939, decedent joined in and acknowledged a warranty deed to her mother as to an undivided interest in some real estate under the name of "Hattie Mary Bartlett."

V. Establishment by respondent of the important element of intent is very questionable. If it served Mr. Long's and decedent's purpose, they held themselves out as husband and wife. If business transactions, homestead exemption, or actions in court arose and it served their purpose better to be single, then they so signed and ignored any claim of marriage.

The evidence of actions, signatures and statements by both parties, many of them under oath, negatives existence of a common-law marriage. These actions were not rare and with long intervals between them. They were numerous and continuous from the 1930s until shortly before decedent's death in 1956.

A significant statement was quoted by the trial court, and has been repeatedly quoted in common-law cases by this court. Justice Morling said in Hoese v. Hoese, 205 Iowa 313, 314, 217 N.W. 860, "Common-law marriages do exist. Concubinage also exists."

Respondent has not carried the burden, and has not shown by clear, consistent and convincing evidence that a common-law marriage existed. While in the Gammelgaard case a marriage was established under the facts of that case, a statement by the court in the opinion is pertinent to the case at bar: "The total of the various contentions must be added and the weight determined. So far as they are in dispute we give weight to the findings of the able trial court, and are satisfied with them." (Page 987 of 247 Iowa)

From the complete record we decide in favor of appellee.

VI. We will discuss the questions of the forum and jury trial very briefly. Appellant now contends he was in the wrong forum; in probate. He contends he was entitled to a jury trial at law. Apparently both parties were content to try the case as an equitable action in the trial court. We cannot reverse on this basis. If appellant was not satisfied with the forum accepted by both parties, his remedy was to file motion to transfer to the proper docket. By failure to do so he waived the question. Section 611.9, 1958 Iowa Code; In re Estate of Allen, 247 Iowa 618, 75 N.W.2d 241; Beem v. Beem, 241 Iowa 247, 41 N.W.2d 107; In re Estate of Pierce, 245 Iowa 22, 60 N.W.2d 894; Cleghorn v. Benjamin, 239 Iowa 455, 31 N.W.2d 887; In re Estate of Anders, 238 Iowa 344, 26 N.W.2d 67.

In In re Estate of Lenders, 247 Iowa 1205, 1210, 78 N.W.2d 536, 539, we said: "We have repeatedly pointed out the district court in this state is only one court. Before it all proceedings come, whether law, equity or probate. If no motion is made to transfer to another docket the district court, sitting in probate, may hear and determine litigation which could or should have been brought at law or in equity. The point the executrices now raise relates at most to a mere procedural irregularity which they waived, and does not go to the court's jurisdiction. See In re Estate of Allen, 247 Iowa 618, 75 N.W.2d 241, and

citations; Williams v. Morrison, 242 Iowa 1054, 1062, 1063, 48 N.W.2d 666, 670, and citations."

The judgment and decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur except OLIVER, J., not sitting.