IN RE ESTATE OF FLOYD J. MALLI, deceased.

JAMES MALLI and MRS. JAMES MALLI, appellees, v. LEONA MALLI, appellant.

No. 52323.

(Reported in 149 N.W.2d 155)

MARCH 7, 1967.

Sheridan & Sheridan, of Waukon, for appellant.

Hart & Hart, of Waukon, for appellees.

SNELL, J.—This controversy arose in probate in the Matter of the Estate of Floyd J. Malli, deceased. In the trial court it was tried as a law action and has been so presented on appeal. It involves a claimed common-law marriage. Because of the way the issues arose the parents of decedent were applicants and Leona Howe was respondent. Issues were joined when Leona Howe as administratrix listed herself as common-law wife and decedent's parents filed an application to correct the list of heirs.

The trial court in a careful review of the evidence and applicable law found that a common-law marriage had not been established.

Respondent appealed. We affirm.

Floyd J. Malli was married in 1930 by a Presbyterian minister. He was again married to the same wife by a Catholic priest in December 1945. He and his then wife were divorced on November 5, 1948. She survived Floyd J. Malli.

Beginning sometime thereafter in 1949 and continuing at least spasmodically until his death he lived with Leona Howe. He was a construction worker working for a contractor and was employed out of town much of the time, but when in Waukon received mail at 304 S. High Street, which was the home of Leona Howe and her brothers. Leona claimed he lived there with her but it is significant that neither brother testified in support of this allegation. Leona Howe at times visited him when he was working out of town and on four occasions they registered at hotels as Mr. and Mrs. Floyd Malli, and at other times stayed together. When they were home he furnished money for groceries and they were frequently together. At taverns he sometimes referred to her as the "old lady", "The Mrs." and sometimes as "my wife."

They made joint Federal income tax returns as Floyd J. and Leona Malli for the years 1955, 1956 and 1957. It would appear that this method of reporting income resulted in less tax and a greater refund than if Floyd J. Malli had made an individual return. To what extent Leona Howe had a separate income does not appear.

Leona Howe at all times maintained a separate bank account under her own name as Leona Howe.

The parties were of the Catholic faith and Leona offered as an excuse for their cohabitation as common-law husband and wife the fact that the church did not permit the remarriage of a divorced person whose former spouse was still living.

Leona Howe was a member of St. Patrick's Church in Waukon under that name and her name appears as a contributor in modest amounts under that name for the years 1953, 1954, 1956, 1957, 1958, 1959, 1960 and 1961. The records show no contributions by Floyd J. Malli.

She bought insurance policies under the name of Leona Howe.

She signed applications for homestead tax credit and assessment rolls as Leona Howe and also signed signature cards and statements of account at Waukon State Bank as Leona W. Howe.

Under date of July 23, 1960, Leona W. Howe, listing herself as single, signed a deed conveying property in Waukon to her

brother, Donald L. Howe, and on July 18, 1959, she, together with a brother, signed and acknowledged a warranty deed conveying property in Waukon and therein listed herself as single in the deed and acknowledgment. This deed has been on record in the office of the recorder of Allamakee County since June 28, 1960.

On September 6, 1961, while testifying under oath in the District Court of Allamakee County in a case in no way related to the case before us, Leona Howe gave her name as Leona Howe.

In 1956, 1958 and 1960 she obtained an Iowa Drivers License under the name of Leona W. Howe or Leona Winifred Howe. She listed her occupation as housework.

In December 1962 under voir dire examination as a prospective juror she gave her name as Leona Howe.

The trial court found and we agree that there was no direct testimony that these parties ever had any contract or agreement to consider themselves married to each other.

Floyd J. Malli died intestate June 28, 1959.

On the 12th day of August, 1959, under the name of Leona W. Howe, she subscribed and swore to an application for the appointment of an administrator for the estate of Floyd J. Malli stating therein that the decedent left no spouse, that the petitioner was a creditor of the decedent and that James Malli, the father, and Mrs. James Malli, the mother, were the next of kin entitled to administration. Thereafter on the 14th day of March, 1960, Leona W. Howe subscribed and swore to a claim against the estate of Floyd J. Malli for money loaned and owed in the sum of $5057.87. Included was an item for garage rent at $6.00 per month for 27 months. The claim was subsequently disallowed.

On August 23, 1960, she filed a probate inventory and therein referred to herself as a common-law wife.

On May 25, 1961, the parents of the deceased filed an application to correct the list of heirs as filed by Leona Howe. The application was resisted by respondent.

I. At the trial applicants introduced into evidence from the files and records in the estate respondent's verified petition for appointment of administrator wherein she stated that dece-

dent left no spouse and his next of kin were his father and mother. Applicants then rested. Respondent moved to dismiss. The motion was overruled and respondent claims error.

The petition for appointment of administrator was signed and sworn to by respondent. It was part of the official records in the estate. Whether this was a "judicial admission" or an "evidential admission" as distinguished in Hofer v. Bituminous Casualty Corp., 260 Iowa 81, 148 N.W.2d 485, is of no importance. It was an admission and entitled to consideration as such. Lawrence v. Tschirgi, 244 Iowa 386, 390, 57 N.W.2d 46.

The official records listed applicants as parents and next of kin of decedent. The records based on respondent's sworn application listed decedent as having no spouse. Applicants met the burden resting on them. Under the record then before the court and the provisions of section 633.219(2), Code of Iowa, applicants would be entitled to prevail.

II. Our most recent review of the problems incident to common-law marriages was in Coleman v. Graves, 255 Iowa 396, 122 N.W.2d 853. The issue in that case arose in a partition action and was tried in equity and reviewed de novo. Rule 334, Rules of Civil Procedure. In the case at bar the issue arose in probate and was tried and appealed as a law action. Our review is accordingly limited. In re Estate of Allen, 251 Iowa 177, 179, 100 N.W.2d 10. Further citations are unnecessary. Rule 344(f) (1).

In Coleman v. Graves, supra, on page 402, the basic rules with supporting citations are stated: "Common-law marriages are recognized as valid in Iowa. * * * A common-law marriage may be proven by circumstantial evidence. * * * Mere proof of cohabitation is not sufficient." Quoting from In re Estate of Long, 251 Iowa 1042, 102 N.W.2d 76, we outlined the elements necessary to establish a common-law marriage as follows:

" '1. Intent and agreement in praesenti, as to marriage, on the part of both parties, together with continuous cohabitation and public declaration that they are husband and wife. 2. The burden of proof is on the one asserting the claim. 3. All elements of relationship as to marriage must be shown to exist. 4. A claim of such marriage is regarded with suspicion,

and will be closely scrutinzed. 5. When one party is dead, the essential elements must be shown by clear, consistent and convincing evidence.' " See 255 Iowa loc. cit. 403.

■ Courts prefer a finding that a legitimate marriage exists rather than a finding of meretricious, illicit and lewd conduct. Gammelgaard v. Gammelgaard, 247 Iowa 979, 981, 77 N.W.2d 479.

The law favors marriage. In re Estate of Allen, supra, loc. cit. 182 of 251 Iowa, quoting from 35 Am. Jur., Marriage, section 220.

We have, however, recognized that while "Common-law marriages do exist. Concubinage also exists." Hoese v. Hoese, 205 Iowa 313, 314, 217 N.W. 860. We have also said that the burden to establish the marriage is upon the one who asserts it. Gammelgaard v. Gammelgaard, supra, loc. cit. 980.

III. The law being well settled and correctly stated by the trial court our problem is the sufficiency of the evidence to support the trial court's findings.

■ The trial court carefully reviewed the evidence tendered by about 30 witnesses and 160 exhibits and concluded that the most that could be said for all the evidence viewed in the light most favorable to her merely placed the evidence of the parties in equipoise. Such a finding would not entitle respondent to prevail. We have reviewed the record, only a small part of which we have detailed, and find the trial court's findings and conclusions fully supported.

There was evidence that decedent and respondent at times stayed together in hotels and other rooms and apartments. At such times they used the names "Mr. and Mrs. Floyd J. Malli." At times they used terms indicating a married status. Decedent received mail at respondent's home. The claim that decedent stayed in respondent's home was in no way corroborated by respondent's brothers who lived there. There was substantial evidence that during the years involved decedent made his headquarters at the home of his brother.

For years before and after decedent's death respondent did all of her business and signed legal papers as Leona Howe. The

only exceptions were when on three occasions she joined with decedent on income tax reports. She opened decedent's estate as a creditor stating that he left no spouse. Her own record refutes the propositions on which she has the burden of proof. The only conclusion to be drawn is that she assumed the status that at the time seemed most profitable or convenient.

The record does not support respondent's attempt to justify her position because of her church affiliation.

Father David A. Wheeler, a priest and officialis of the Metropolitan Tribunal of the Archdiocese of Dubuque, was called as a witness. He was "the Chief Justice of the Ecclesiastical Tribunal, which deals primarily with marriage cases." Among other degrees held by him he was a Licentiate in Sacred Theology and a Doctor of Canon Law. He testified at length and in detail. His testimony provided no comfort or support for respondent's position. The situation in the case at bar would not be recognized by the church as a marriage. Adultery or sexual intercourse is classified by the church as a serious sin. He was speaking of adultery as defined under church law and not under our criminal law. There is nothing in the record before us to indicate that respondent's conduct was viewed with approval by her church. Her claimed conduct was sinful under Ecclesiastical Law in any event and there is nothing to indicate excuse under any idea of comparative rectitude.

Respondent was schooled in the doctrines of her faith. She claims that she had no civil marriage ceremony because of her religion. She knew that under her church law she was not married.

She testified that during the years from 1949 on to the date of Floyd Malli's death she always believed she was his wife. She was competent to so testify. Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 603, 94 N.W.2d 750, 82 A. L. R.2d 465; In re Estate of Allen, supra, loc. cit. 179, 180.

Her testimony was admissible but her claim was so contrary to her own record as to have doubtful probative value.

The trial court found her position untenable. The record supports the finding. We find no error.

The case is affirmed.—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.