In the Matter of the ESTATE of Wilson Paul FISHER, Jr., Deceased.

Carroll Sue FISHER, Administrator, Appellant,

v.

Cary Laurence FISHER and Christian Louis Fisher, by Mother and Next Friend, Cheryl Joy Pepin, Appellees.

No. 54008.

Supreme Court of Iowa.

May 5, 1970.

**802**

Henry J. Haugan, Des Moines, for appellant.

Theodore T. Duffield and Roy M. Irish, Des Moines, for appellees.

REES, Justice.

Decedent, Wilson Paul Fisher, Jr., died intestate on November 21, 1968, a resident of Polk county. On the petition of decedent's mother, appellant who here claims to be the common-law wife of decedent was appointed administrator. The divorced former wife of decedent, acting as the mother and next-friend of two minor children of decedent, filed application to remove administrator, and trial court ordered removal and appointed decedent's former wife, Cheryl Joy Pepin, as administrator, from which order this appeal is taken. We are unable to agree with the trial court, and reverse and remand for the entry of orders in keeping herewith.

The appellees, Cary Laurence Fisher and Christian Louis Fisher, are the issue of the marriage of Wilson Paul Fisher, Jr., and Cheryl Joy Fisher, one of said children being the issue of the marriage by natural birth and the other by adoption. The parties were married in June, 1965, and the marriage relationship terminated by divorce in August, 1967. The two children, Cary Laurence Fisher and Christian Louis Fisher, are identified in the record as appellees, and are represented by their mother and next-friend, Cheryl Joy Fisher Pepin. The custody of the children by the terms of the decree of divorce was vested in the mother. About October of 1967 the decedent became acquainted with the appellant, Carroll Sue Vanderpool Perdue, who was then married to one Platt Perdue, who was serving in Germany as a member of the Armed Forces. Platt and Carroll Perdue were the parents of one child, born in January of 1967. In October, 1967, the decedent and the appellant started dating each other, and in June, 1968, they took up residence together in a house at 1919 Capitol in Des Moines. Earlier in 1968 the appellant had filed a petition for divorce in the district court of Dallas county. Prior to the entry of a decree of divorce, a child which the record establishes was the issue of the relationship between the appellant and the decedent, Wilson Paul Fisher, Jr., was born on August 27, 1968. A decree of divorce was entered September 9, 1968. The child who is referred to above as the issue of the relationship between the decedent and the appellant was delivered at Broadlawns Hospital in Des Moines, and just prior to its birth the appellant was taken to the hospital by the decedent. When she entered the hospital the appellant identified herself as Carroll Sue Fisher, and at the time of the birth of the child the birth certificate identified the

child as Wilson Paul Fisher, III. The record discloses that the administrative officer of the hospital was subsequently advised that the mother of the child was married to Platt Perdue, and caused to be filed a substitute or amended birth certificate identifying the child as Wilson Paul Perdue. The birth certificate first filed identified Wilson Paul Fisher, Jr., as the father of the child, and the amended or substituted certificate of birth indicated that the father of the child was Platt Perdue.

Following the entry of the decree of divorce on September 9, 1968, the appellant and the decedent continued to live together, removing from the residence at 1919 East Capitol, in late October, to a rented house in or near Granger, Iowa. During all the time the parties lived together and until early September, 1968, the appellant received an allotment out of the service pay of her husband, Platt Perdue. These allotment payments terminated in September of 1968. At the time the appellant filed her petition for divorce, and during its pendency, she at no time advised her husband of the fact of her pregnancy, nor did she advise the court at the time the divorce was proved up of the fact that she had been delivered of a child not the issue of her marriage to her husband.

On September 16, 1968, the appellant purchased a policy of life insurance on her own life, the agent for the insurance company having been summoned to the home at 1919 East Capitol by the decedent. The application for insurance showed that Wilson P. Fisher, Jr., was her husband, and the record discloses that during the time the information was being furnished the agent by the appellant the decedent Fisher was personally present, and that the initial monthly payment was paid to the agent by the decedent by his personal check.

On October 26, 1968, the appellant and the decedent opened a joint checking account in Brenton State Bank, Granger,

Iowa, under the names "W. P. or Carroll Fisher, Jr.", and the authorized signatures on the bank record card indicated that Wilson Paul Fisher, Jr., or Carroll Fisher were authorized to check on the account.

The record discloses that at the time the agent for the life insurance company was at the Fisher home in Des Moines completing the application for life insurance on the life of the appellant, one Betty Jean Hopkins, a foster sister of the decedent, and her husband was present. It appears that Mr. & Mrs. Hopkins owned a set of rings, a wedding band and an engagement type ring, which that night they sold to the decedent who in their presence gave the rings to the appellant and she put the rings on her hand and continued to wear them throughout the relationship of the decedent and appellant.

The decedent came to his death as the consequence of a motor vehicle accident on November 21, 1968. On November 25, 1968, a petition for administration upon his estate on the part of Alice Viola Fisher, the decedent's mother, was filed in the office of the clerk of Polk county, in which petition the appellant is identified as the wife of the decedent, and the child, Wilson Paul Fisher, is identified as a child of the decedent. On November 25, 1968, Carroll Sue Fisher was appointed administrator of the decedent's estate.

Four days later the appellee as the next-friend and mother of Cary Laurence Fisher and Christian Louis Fisher, filed her application for removal of administrator, alleging that the decedent's mother, the petitioner for administration, is not an heir, and that Carroll Sue Fisher is not the surviving spouse of the decedent, and that the decedent left no surviving spouse, alleging also that the sons, Cary Laurence Fisher and Christian Louis Fisher are the next-of-kin of the deceased, and praying that Carroll Sue Fisher be removed as administrator. A petition for administration upon the estate of the decedent identifying the two children, the issue of his first mar-

riage, as his only heirs at law and praying for the appointment of Cheryl Joy Pepin as administrator was filed on December 10, 1968. Following answer on the part of Carroll Sue Fisher and reply, trial was had to the court and the court found no common-law marriage agreement existed between Carroll Sue Perdue and the decedent, Wilson Paul Fisher, Jr., specifically finding the evidence to establish the claimed common-law marriage was not clear, consistent or convincing. An order was subsequently entered removing Carroll Sue Perdue as administrator of the estate of the decedent and appointing Cheryl Joy Fisher, formerly known as Cheryl Joy Pepin, as administrator thereof. From such finding and orders this appeal is taken.

■ I. The appellee contends the action was tried in the court below as an ordinary action at law and is not reviewable de novo. We are unable to agree. The record discloses the trial was conducted by the trial court as an equitable proceedings; answers were taken to questions propounded to the several witnesses subject to objections made. In a few instances, the court ruled upon objections to questions propounded to witnesses. In support of her proposition the appellee cites In re Estate of Wulf, Deceased, 242 Iowa 1012, 48 N.W.2d 890, 33 A.L.R.2d 698; In re Pierce's Estate, 245 Iowa 22, 60 N.W.2d 894; and In re Allen's Estate, 251 Iowa 177, 100 N.W.2d 10. All of these cases antedated the enactment of the present Probate Code, specifically section 633.33 Code, 1966, which provides,

"Action to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity."

We conclude, therefore, that our review of the record in this case is de novo.

■ II. Concededly, the appellant, Carroll Sue Fisher, whose marriage to Platt Perdue, was terminated by a decree of divorce on September 9, 1968, could not have prior to that date entered into a valid marriage relationship with the decedent. We therefore need concern ourselves in the main with the record insofar as it establishes or fails to establish a common-law marriage relationship commenced on or subsequent to the date of her decree of divorce. We may of course consider the entire record of the relationship of the parties for the purpose of determining the ultimate question which is here before us. Section 595.19, Code, 1966, provides,

"Marriages between the following persons shall be void: * * * 4. Between persons either of whom has a husband or wife living, but, if the parties live and cohabit together after the death or divorce of the former husband or wife, such marriage shall be valid."

■ Iowa has recognized common-law marriage for well over a century. Blanchard v. Lambert, 43 Iowa 228, 22 Am. Reports 245; In re Estate of Stopps, 244 Iowa 931, 57 N.W.2d 221; Gammelgaard v. Gammelgaard, 247 Iowa 979, 77 N.W.2d 479; In re Estate of Long, 251 Iowa 1042, and cases cited, p. 1046, 102 N.W.2d 76. "Where recognized, common-law marriages are as fully valid as ceremonial marriages * * * however, the courts do not look on such marriages with favor, and * * * where a common-law marriage is claimed, the courts will carefully scrutinize the evidence and require that the marriage be established by clear and convincing evidence." 55 C.J.S. Marriage § 6, p. 818. If any of the essentials of a common-law marriage are lacking, the relationship is illicit and meretricious and is not a marriage. 55 C.J.S. Marriage p. 819. There is no presumption that persons are married. Accordingly, the burden of proving a marriage rests on the party who asserts it, particularly where a common-law marriage is asserted; and an allegation that a party was

not married does not thereby require a pleader to assume the burden of proof of non-marriage. 55 C.J.S. Marriage § 43a, p. 887. A claim of common-law marriage is regarded with suspicion, and will be closely scrutinized. Thus, in order to establish a common-law marriage, all of the essential elements of such a relationship must be shown by clear, consistent and convincing evidence, especially must all of the essential elements of such a relationship be shown when one of the parties is dead; and such marriage must be proved by a preponderance. 55 C.J.S. Marriage § 45b, pp. 911, 912. The elements and conditions necessary to establish the existence of a common-law marriage have been outlined by this court as: (1) intent and agreement in praesenti as to marriage on the part of both parties together with continuous cohabitation and public declaration that they are husband and wife; (2) the burden of proof is on the one asserting the claim; (3) all elements of relationship as to marriage must be shown to exist; (4) a claim of such marriage is regarded with suspicion, and will be closely scrutinized; (5) when one party is dead, the essential elements must be shown by clear, consistent and convincing evidence. In re Estate of Long, 251 Iowa 1042, 1047, 102 N.W.2d 76; Coleman v. Graves, 255 Iowa 396, 402, 403, 122 N.W.2d 853; In re Estate of Malli, 260 Iowa 252, 256, 149 N.W.2d 155. Within the constrictions of the minimal essentials for proving the establishment of common-law marriages as outlined in the cases last above cited, we must now turn to a determination as to whether or not the record establishes the existence of a common-law marriage between the appellant and the decedent.

III. The purpose and intention of Carroll Perdue in her relationship with Wilson Paul Fisher, Jr., were of the greatest importance as bearing on the fact of marriage. Likewise the purpose and intention of decedent in his relationship with Carroll were of equal importance. Carroll Perdue Fisher as a witness would have been incompetent to testify to any transactions or communications with the deceased amounting to a mutual agreement to marry, but she was not incompetent to testify as to her own purposes and intentions and the circumstances under which their cohabitation was begun and continued. In re Estate of Boyington, 157 Iowa 467, 475, 137 N.W. 949. It is well settled that where cohabitation is in its beginning illicit affirmative proof of a subsequent present intention to change that relationship into legitimate relationship of husband and wife is essential to establish a common-law marriage. In re Estate of Boyington, supra, 476, 137 N.W. 949 and cases therein cited. While the record is in some respects conflicting, it tends to show a willingness on the part of the decedent and Carroll Perdue that they be considered husband and wife, both before and after the entry of the decree of divorce in Dallas county by which Carroll Perdue was divorced from her former husband, Platt Perdue. When she checked into the hospital just prior to the delivery of her child in August of 1968, she was accompanied by the decedent, who supplied the general information taken on her admission to the hospital, and was cognizant of the fact that the name appearing on the admission records was Fisher. He acquiesced in the use of his own family name by which the child was known. Shortly after the entry of the divorce decree in Dallas county, he introduced Carroll as his wife to a gas appliance man at Granger. The gas man, a Mr. Biondi, had been acquainted with Carroll and knew that she was married to Platt Perdue, and asked the decedent if he was Mr. Perdue. Biondi was then advised that Carroll had divorced Perdue and that Wilson Paul Fisher, Jr. "is her husband now". On October 21, 1968, the decedent introduced Carroll to a friend, Melvin Moore, as "my wife, Carroll". On August 2, 1968, the decedent made application for employment at Iowa Clay Pipe Company, and on his written application for employment and in his own handwriting he indicated his mar-

ital status as "married", and directed in case of accident or injury Carroll Fisher of 1919 Capitol should be notified. This was of course prior to the entry of the decree of divorce by which the appellant was divorced from her prior husband but is significant with respect to the relationship of the parties. The purchase of the rings by the decedent and his gift of them to the appellant is also a significant circumstance as bearing upon their relationship to each other. The rings were a wedding band and an engagement type ring, and as both parties had been ceremonially married to others before, they certainly recognized the significance of the custom of giving and receiving wedding and engagement type rings. After the divorce decree by which the appellant was divorced from her former husband, the decedent accompanied the appellant's parents to a grocery store in Des Moines and introduced them as "my mother-in-law and father-in-law". The willingness of the decedent to recognize the appellant as his wife during the relatively short time following the entry of the decree of divorce in appellant's favor on September 9, 1968, and the death of the decedent on November 21, 1968, runs through the entire record.

There are of course, as in all cases, inconsistencies. His former wife, the appellee here, indicated there were discussions of a reconciliation between the decedent and herself in June, 1968. She knew the decedent and appellant were living together, but testified the decedent had never indicated to her that he was married to the appellant or for that matter to anyone else. On balance, however, we find the preponderance of the evidence establishes that the conduct of the decedent, as the record discloses, was consistent with the existence of the claimed common-law marriage relationship.

■ IV. Marriage is a civil contract, requiring the consent of the parties capable of entering into other contracts * * *. Section 595.1, Code, 1966. Mu-

tuality of consent means just what it means in ordinary civil contracts. Brisbin v. Huntington, 128 Iowa 166, 169, 103 N. W. 144; Reppert v. Reppert, 214 Iowa 17, 24, 241 N.W. 487. No particular form or ceremony is necessary, and all that is required is that the minds of the parties meet in mutual consent, and this is accomplished if they live together and in so doing intend to sustain the relationship of husband and wife but neither such intention nor consent can be inferred from cohabitation alone. Brisbin v. Huntington, supra, 128 Iowa 169, 103 N.W. 144, and cases therein cited. A common-law marriage may be proven by circumstantial evidence. Coleman v. Graves, 255 Iowa 396, 402, 122 N.W.2d 853; In re Estate of Allen, 251 Iowa 177, 182, 100 N.W.2d 10, 12; 35 Am.Jur., Marriage, § 207, p. 316; 55 C.J.S. Marriage § 45, p. 902.

■ That the appellant and the decedent were planning a ceremonial marriage in futuro seems to be established in the record without question. We recognize that a contract per verba futuro which implies no more than that the parties will marry each other at a later time is not sufficient to establish a common-law marriage in the absence of other circumstances. In Pegg v. Pegg, 138 Iowa 572, 575, 115 N.W. 1027, 1028, this court said,

"We recognize so-called common-law marriages as valid; but for such a marriage to be valid there must be a present agreement to be husband and wife, followed by cohabitation as such."

■ The conduct of the decedent in summoning an insurance agent to his home to secure life insurance upon the life of the appellant at which time he either represented himself to be her husband or acquiesced in her statements that such was the case, is indicative of a present intention on the part of the decedent to recognize the marriage relationship. The representation of the appellant to the insurance agent on her own part that she was the wife of the decedent made in the presence of the

decedent and either acquiesced in by him or not denied, is a strong circumstance evidencing that the minds of the parties had met, and that there was mutuality of consent to establish a marriage relationship. Introduction of one party by the other as the wife or husband is in and of itself an acknowledgment of the marital relation, and while it may not be in and of itself proof of a present agreement and intent, it may support other evidence and is important in cases of the kind. Gammelgaard v. Gammelgaard, supra, 247 Iowa page 986, 77 N.W.2d 479.

Appellant suggests arguendo that had the decedent Fisher not died, and had the appellant here instituted a suit for divorce against him that Fisher could not have successfully denied the existence of the marriage relationship. We agree, assuming the record in the trial court in such a hypothetical situation reflected the same facts as were established in the instant case.

The total of the contentions of the respective parties must be added and the weight determined. So far as they are in dispute, we give weight to the findings of the able trial court, but find ourselves unable to agree with them. As in most litigation there is something to be said on both sides, and of course if there were no differing opinions there would be no lawsuit. We conclude, however, that the appellant has successfully carried the burden of showing a present agreement for a common-law marriage existed between herself and the decedent, and that all elements of the marriage relationship have been shown to exist. We conclude the marriage relationship was shown by clear, consistent and convincing evidence.

The case is reversed and remanded to the trial court for an entry of further orders in the Estate of Wilson Paul Fisher, Jr., deceased, in keeping herewith.

Reversed and remanded.

All Justices concur.