**In re the MARRIAGE OF Clifford LeRoy GROTHER and Connie Mae Grother a/k/a Connie Mae Cady.**

**Clifford LeRoy GROTHER, Appellant,**

v.

**Connie Mae GROTHER a/k/a Connie Mae Cady, Appellee.**

No. 3–58807.

Supreme Court of Iowa.

May 19, 1976.

Lew Eells, Cedar Rapids, for appellant.

Henry Keyes, Keyes & Crawford, Cedar Rapids, for appellee.

Heard by REYNOLDSON, Acting C. J., and LeGRAND, REES, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

The sole question in this appeal is the sufficiency of proof of a common-law marriage. The trial court found insufficient proof of the marriage and dismissed the action brought by petitioner Clifford LeRoy Grother to dissolve his alleged marriage to respondent "Connie Mae Grother a/k/a Connie Mae Cady." We affirm the trial court.

Since this is an equity case our review is *de novo*. The burden was on Clifford as proponent of the marriage to prove it by a preponderance of evidence. Cf. *In re Estate of Fisher,* 176 N.W.2d 801, 805 (Iowa 1970) ("when one party is dead, the essential elements must be shown by clear, consistent and convincing evidence"). A claim of common-law marriage is regarded with suspicion and is closely scrutinized. It was necessary for Clifford to prove an intent and agreement *in praesenti* to be married by both parties together with continuous cohabitation and public declaration that they were husband and wife. *In re Estate of Dallman,* 228 N.W.2d 187, 189 (Iowa 1975); *In re Estate of Fisher,* supra, and citations.

An additional principle is applicable here. Connie moved into Clifford's home in the fall of 1971 and admittedly commenced illicit cohabitation with him before the June 1972 dissolution of his marriage to another woman. When cohabitation is in the beginning illicit, affirmative proof of a subsequent present intention to change that relationship into the legitimate relationship of husband and wife is essential to establish a marriage. *In re Estate of Fisher,* supra, at 805.

Proof of continuous cohabitation from sometime before June 1972 until Connie moved out of Clifford's home in February 1975 is uncontroverted. The dispute concerns the sufficiency of proof of the parties' intent and agreement to be married and of their public holding out that they were husband and wife. We find the proof insufficient on both issues.

When Connie moved into Clifford's home, she ostensibly did so to act as housekeeper for Clifford and several of his children. He was then separated from his wife. Connie became pregnant in the spring of 1972, several months before termination of Clifford's marriage. She gave birth to the child, a boy, in November 1972. She testified the father of the child is "Charles Hammon". The record shows that is a name once used by Clifford as a subterfuge to avoid creditors.

In any event, Connie acknowledges the parties engaged in illicit sexual relations after her pregnancy but before the termination of Clifford's marriage. Sometime after she became pregnant Connie began wearing a ring on the third finger of her left hand. She testified it was a friendship ring she purchased for herself after she became pregnant; Clifford testified it was a wedding ring he gave Connie about a week after termination of his prior marriage, manifesting their intention to be married.

Connie testified Clifford asked her on several occasions to marry him and she refused. He admits she consistently refused to go through a ceremonial marriage. In December 1973 he testified in a deposition for an unrelated civil suit that Connie was single. Although he now claims he then committed perjury, we believe his motive for perjury stronger now than it was then. We find Clifford did not prove an intent or agreement *in praesenti* to be married by a preponderance of evidence.

The record is decidedly ambiguous on the separate issue of a public holding out by the parties that they were husband and wife. Friends testified they assumed the parties were married after the dissolution of Clifford's marriage because they continued to live and go out together but none testified Connie said they were married and none testified to her use of the name "Grother". Moreover, no one testified Clifford said they were married or referred to Connie as his wife.

The parties were evicted from one dwelling under a notice identifying them as Mr. and Mrs. Clifford Grother. However, Connie used the name Cady in all credit transactions. On August 22, 1972, Connie went to a doctor for prenatal care. She gave her name as "Mrs. Clifford Grother" at that time but said she did so only at her mother's suggestion and corrected the name to "Miss Connie Cady" later the same day. A doctor bill containing a final entry dated September 26, 1972, identified her as "Miss Connie Cady". When her son was born November 20, 1972, she identified herself as Connie Mae Cady and did not name the child's father in supplying information for the child's birth certificate. Yet, the following day she gave Clifford a picture of the child after writing his name as "Walter Brian Grother" on the back. She obtained ADC benefits as a single person.

Arguments can be constructed to support the contentions of both parties from this ambiguous record. However, we agree with the trial court that it falls short of showing a public holding out by the parties that they were married by a preponderance of evidence.

The trial court did not err in holding Clifford failed to prove a common-law marriage to Connie.

We are told Clifford wished to establish the marriage in order to obtain visitation rights with Walter Brian. Like the trial court, we do not reach the issue of the child's paternity.

AFFIRMED.