SCHILLING v. PARSONS, ADMINISTRATOR.

[No. 16,655. Filed October 22, 1941. Rehearing denied December 5, 1941.]

*Lee J. Hartzell, L. A. Todd,* and *Guy Nichols,* all of Fort Wayne (*Claude Cline,* of Huntington, of counsel), for appellant.

*Charles H. Halter* and *Morris & Newkirk,* all of Fort Wayne, for appellee.

BLESSING, C. J.—This appeal comes to this court as the result of the efforts of appellant, petitioner below, to secure to herself as sole distributee, the estate of appellee's decedent. Appellant's right as sole distributee

to said estate is founded upon the claim that she was the common-law wife of said decedent.

The case was tried to the court and upon proper request the court made a special finding of facts. The facts found by the court are as follows:

"1. The court finds that Otto M. Schilling, the decedent, died intestate, a resident of Allen County, Indiana, on the 13th day of June, 1938, residing at the time of his death at 706 Van Buren Street, Ft. Wayne, Ind.; that Letters of Administration were issued in this court upon his estate on the 16th day of June, 1938, and that Elmer Parsons was appointed by this court and qualified as administrator of said estate; that on the 22nd day of December, 1939, said administrator filed in this court his final report in said cause, which final report was by the court approved, except as to the question of heirship raised by petitioner, Belle Gettys Schilling herein.

"2. The court further finds that Otto M. Schilling, the decedent, at the time of his death left no children or descendants of deceased children surviving him, and left no father or mother surviving him and no sisters or brothers surviving him.

"3. The court further finds that this petitioner met the said decedent in 1907, and that afterwards in the year 1908, said decedent and said petitioner entered into an agreement whereby the petitioner and decedent were to live together, the decedent was to pay the bills, pay the rent and buy the coal, and the petitioner was to quit taking boarders; that the decedent gave her a gold ring to bind the contract to live together as husband and wife.

"4. That thereafter said petitioner and decedent did live together in various places in the City of Ft. Wayne, Ind., for a period of about 30 years until decedent's death.

"5. That thereafter decedent did make certain purchases of groceries and coal and did purchase some clothing for petitioner, and did make payments of rent; that petitioner looked after and took care of these places of residence; that she prepared the meals; that she did his laundry and

that they lived in and occupied the same home and bed.

"6. That almost continuously while they were residing in Ft. Wayne, Ind., over the 30-year period, the petitioner did keep boarders and roomers and conducted a rooming house in the same place where this decedent and petitioner resided, and that after his death, she told the coroner, the undertaker and a Mr. Prelle, that he was a boarder; and that she accepted from Mr. Prelle, $10.00 in payment of the board and room for his last week of life; that she told the coroner on his official call that the deceased, Schilling, was a single man.

"7. That during different summers, petitioner and decedent lived in and occupied the same bed and cottage at Lake James, Indiana, and at Lake Pleasant, Michigan; that on visits to the cities of Detroit, Port Huron, Toledo, Cleveland, Niagara Falls, New York City and Indianapolis, decedent registered for them as Mr. and Mrs. Otto M. Schilling at the various hotels where they occupied the same rooms.

"8. That outside of occupying the same house and same bed as hereinbefore found, this petitioner and decedent did not hold themselves out in Ft. Wayne, Ind., as husband and wife.

"9. That during the period of 1908 to 1938, to the time of the death of decedent, they occupied the same home, occupied the same bed, and at one or two times the decedent referred to the petitioner as his wife, and one or two times the petitioner referred to decedent as her husband, both times out of the presence of the other, but at no other times did they hold themselves out to their neighbors or the community in Ft. Wayne, Ind., or at the two lakes above mentioned, as husband and wife.

"10. That prior to his death and while occupying the same house, the petitioner signed a written contract for telephone service at the house where they both resided, and had the service listed under her name as Mrs. C. B. Gettys.

"11. That during the entire period from 1908 to decedent's death, petitioner caused her name to be listed in Polk's Directory as Mrs. C. B. Gettys; that after decedent's death, she made written appli-

cation to the Department of Public Welfare for Old Age Pension under the name of Clarinda Belle Gettys; that there is no evidence that petitioner ever used the name of Schilling in Ft. Wayne, Indiana, during Otto M. Schilling's life time, but has used the names of C. B. Gettys, Belle Gettys, and Clarinda Belle Gettys during said time; that there is no evidence of said petitioner ever openly acknowledging in Ft. Wayne, Indiana, to her friends, neighbors and relatives that she was the wife of Otto M. Schilling during his life time.

"12. That at no time prior to the death of Otto M. Schilling, was petitioner and Otto M. Schilling as husband and wife."

Upon the above facts the court stated its conclusion of law as follows:

"WHEREUPON, the court now states his conclusion of law that the law is with the administrator, and that the petitioner take nothing under and by her petition herein, and any costs herein are now ordered taxed against said petitioner."

Exception was taken by the appellant to the court's conclusion of law, after which the court entered judgment in favor of the appellee. The exception to the conclusion of law being the only error assigned, the sole question submitted for our consideration is whether or not the conclusion of law is supported by the finding of facts.

Appellant contends that the finding of facts establishes a common-law marriage between appellant and appellee's decedent, and for that reason challenges the conclusion of law stated by the trial court.

In the case of *Meehan* v. *Edward Valve, Etc., Co.* (1917), 65 Ind. App. 342, 344, 117 N. E. 265, in which the question of a common-law marriage was before this court, we find this language:

"While common-law marriages are in derogation of our statutes, still such marriages are recognized as valid and binding when made between parties

of contracting capacity by their mutual assent, followed by cohabitation as husband and wife, together with such other circumstances as are essential to the establishment of such a marriage."

Also this further language from the same opinion:

"In short, enough must be said and done by the contracting parties to show an intention to contract marriage and assume the relation of husband and wife."

From the language above quoted, it is quite clear to this court that a common-law marriage, to be valid, is something more than a mere contract. The contract must be acted upon by the parties, resulting in a marriage status between the man and woman so contracting. Proof of this status varies, depending on the form of the marriage agreement. If the contract is in writing, signed by the parties, or if oral and witnessed, followed by cohabitation of the parties, the marital status is sufficiently established. But where the contract between the parties is oral but not witnessed, even though followed by cohabitation, an additional factor is necessary to establish a common-law marriage. Under such circumstances there must be a holding out by the parties of their marriage status to at least such part of the public in the community in which they live as is made up of their acquaintances, neighbors and relatives. As was said in the case of *Teter* v. *Teter* (1885), 101 Ind. 129, 134:

"The want of form, or the lack of ceremonial rites, does not impair a marriage contract, in cases where it is entered into from good motives and with an intention to contract a present marriage, *and is followed by an open acknowledgment of the marital relation.*" (Our italics.)

To hold that a common-law marriage is established without public acknowledgment of the marriage status of the contracting parties where there is an unwitnessed

oral agreement, would open the door to perjury and fraud, deny to the parties themselves the protection to which they are each entitled, and jeopardize the sanctity of the basic institution of all civilized society, the home.

Guided by what we have heretofore said, we proceed to the examination of the special finding of facts for the purpose of determining whether as a whole they support the trial court's conclusion of law.

Pertinent to the issue as to whether the appellant was the common-law wife of appellee's decedent at the time of the latter's death, it appears from the court's finding number three that appellant and appellee's decedent entered into a contract of marriage. There is no finding that said contract was in writing signed by the parties or that there were any witnesses to the agreement. On appeal all facts not embraced in the special finding will be regarded as not proved by the party having the burden of the issue, and the failure to find a fact essential to recovery is equivalent to a finding against the party having the burden of proving the same. *Maloney* v. *Home Loan & Trust Co.* (1933), 97 Ind. App. 564, 186 N. E. 897, 187 N. E. 682; *Universal Insurance Co.* v. *Glover* (1935), 100 Ind. App. 327, 195 N. E. 583.

The appellant had the burden of proof in this case upon the issue of the existence of a common-law marriage. With this situation before us, if the contention of the appellant is to be upheld, the findings must disclose that appellant and appellee's decedent not only occupied the same home and bed, but that they lived together openly and professedly as husband and wife. The trial court by finding number 8 specifically found that outside of occupying the same house and the same bed, the appellant and decedent did not hold themselves out in Ft. Wayne (the place of their residence) as hus-

band and wife. The finding of the court that on visits to the cities of Detroit, Port Huron, Toledo, Cleveland, Niagara Falls, New York and Indianapolis, appellee's decedent and appellant registered as husband and wife at various hotels was not such holding out and public acknowledgment of their marital status that satisfies or meets the requirement of the law in this State. The public acknowledgment required from parties relying thereon to establish a marriage status, is public acknowledgment in their residential community, so they may receive a *bona fide* public repute of such status.

While it is true that only ultimate facts and not evidentiary facts should be found where a special finding of facts is requested, this court has held that if the finding of an evidentiary fact is of such character as to involve necessarily the existence of the essential or ultimate fact, then the failure to make the ultimate finding may be immaterial. *Universal Insurance Co.* v. *Glover* (1935), 100 Ind. App. 327, 195 N. E. 583. Putting aside all other evidentiary facts found by the court, the statement of the appellant to the coroner on his official call that the deceased, Schilling, was a single man, was such an admission that necessarily involved the ultimate fact of appellant's relationship to said decedent.

It is inconceivable to this court that such an admission could be drawn from a woman who now contends that she and appellee's decedent immediately prior to his death sustained the relation of husband and wife for a period of thirty years. But giving appellant the benefit of any doubt regarding such admission our attention is directed to the last finding of the court. While this finding is somewhat awkwardly stated, its plain meaning is that at no time did appellant and appellee's decedent live together as

husband and wife. This finding is a statement of an ultimate fact and not a conclusion of law. *Bartholomew* v. *Pierson* (1887), 112 Ind. 430, 14 N. E. 249; *Taylor* v. *Canaday, Rec.* (1901), 155 Ind. 671, 57 N. E. 524, 59 N. E. 20.

Without further extending this opinion, we think the facts as found by the court, treating all evidentiary facts as surplusage, fully sustain the conclusion of law reached by the trial court and requires the affirmance of the judgment.

Judgment affirmed.

NOTE.—Reported in 36 N. E. (2d) 958.