**In the Matter of the ESTATE of Otto T. DALLMAN, Deceased.**

**Martha PITKIN, Appellant,**

**v.**

**Louis H. DALLMAN, Executor of the Estate of Otto T. Dallman, Deceased, et al., Appellees.**

**No. 2–56583.**

Supreme Court of Iowa.

April 16, 1975.

Boyle, Schuler & Oltrogge, Clear Lake, and Reitz, Reitz & Reitz, Owatonna, Minn., for appellant.

Buck & Hill, Britt, for appellees.

Heard before MOORE, C. J., and RAWLINGS, UHLENHOPP, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

Asserting a common-law marriage had existed between herself and Otto T. Dallman, deceased, plaintiff seeks declaratory judgment upholding the claimed marital relationship and her attendant entitlement to a dower interest in the estate of said decedent. Trial to the court resulted in an adjudication adverse to plaintiff. She appeals. We affirm.

June 30, 1972, Otto T. Dallman (Otto) died testate in Hancock County.

July 5, Otto's will was admitted to probate and Louis H. Dallman appointed executor.

September 14, plaintiff (Martha) commenced the instantly involved action.

September 21, defendants filed answer thereby, in sum total, denying plaintiff's aforesaid claimed marriage.

May 15, 1973, trial to the court commenced.

This is the factual background of the controversy.

In 1945 Martha, then 21, commenced working as a salaried housekeeper for Otto, then 37, a widower with four children. Martha and her son moved into the Dallman home. Otto's first proposal of marriage in 1946 was declined by Martha. Another such proposal in 1948 was accepted. Due, however, to opposition by Otto's children they agreed to live as husband and wife, with Martha to retain her surname. Thereafter these two parties cohabited. They attended church and social affairs together. While on trips away from home Martha and Otto occupied the same motel rooms.

In 1958, after plaintiff had suffered a miscarriage, she was hospitalized and upon entry registered herself as Martha Pitkin, a single person.

Tax returns filed over the years by Martha and Otto, individually, indicate each thereby designated their status as single. In the filing of such returns neither party ever claimed a deduction for the other as a dependent. Otto deducted from his taxable income the wages paid Martha as housekeeper. Never did Martha use the name Dallman. It does appear that on a few isolated occasions Otto may have referred to Martha as the "Mrs." or "Ma". Otto once advised Martha's sister to the effect he and Martha had agreed they would live together as man and wife. For work done outside the home by plaintiff, charges were made by her and payments received under the name Martha Pitkin.

In June 1958, Otto executed a real estate mortgage and in May 1968, a right of way easement, thereby identifying himself respectively as single and a widower.

March 28, 1972, Otto, by his last will and testament, provided in relevant part: "I give, devise and bequeath to Martha Pitkin the sum of One Thousand and No/100 Dollars ($1,000.00) and my family car, that I own at the time of my death."

Trial court found plaintiff had shown she and decedent expressly agreed to be married and continuously cohabited, but there was a fatal insufficiency of evidence disclosing the parties attendantly held themselves out to the public as husband and wife. Thereupon the court held Martha had failed to show existence of the claimed common-law marriage and accordingly denied her any right to a dower interest to Otto's estate.

The determinative issue on this appeal is whether absence of "holding-out" or public declaration of a marital relationship is fatal to Martha's claimed common-law marriage.

■ I. At the outset an examination of the trial transcript discloses this case was tried as an ordinary action. It is accordingly considered on appeal. See Brammer v. Allied Mutual Insurance Company, 182 N.W.2d 169, 172 (Iowa 1970). See also Iowa R.Civ.P. 267.

Therefore, as stated in Davis v. Hansen, 224 N.W.2d 4, 5 (Iowa 1974):

" '[O]ur review is not de novo but only on errors assigned. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. *If supported by substantial evidence* and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344(f)(1), Rules of Civil Procedure. Stated in other words, in a law action tried to the court its findings of fact having adequate evidentiary support shall not be set aside unless induced by an erroneous view of law. It follows, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, the trial court applied erroneous rules of law which materially affect the decision. We may also interfere when such findings are undisputed or no conflicting inferences may be drawn from them.' "

See also State v. Arnold, 225 N.W.2d 120, 121 (Iowa 1975); Iowa R.Civ.P. 344(f)(1).

II. Proceeding to the issue at hand, In re Estate of Fisher, 176 N.W.2d 801, 804–805 (Iowa 1970) contains this apt observation:

"Iowa has recognized common-law marriage for well over a century. Blanchard v. Lambert, 43 Iowa 228, 22 Am.Rep. 245; In re Estate of Stopps, 244 Iowa 931, 57 N.W.2d 221; Gammelgaard v. Gammelgaard, 247 Iowa 979, 77 N.W.2d 479; In re Estate of Long, 251 Iowa 1042, and cases cited, p. 1046, 102 N.W.2d 76. 'Where recognized, common-law marriages are as fully valid as ceremonial marriage * * * however, the courts do not look on such marriages with favor, and * * * where a common-law marriage is claimed, the courts will carefully scrutinize the evidence and require that the marriage be established by clear and convincing evidence.' 55 C.J.S. Marriage § 6, p. 818. If any of the essentials of a common-law marriage are lacking, the relationship is illicit and meretricious and is not a marriage. 55 C.J.S. Marriage p. 819. There is no presumption that persons are married. Accordingly, the burden of proving a marriage rests on the party who asserts it, particularly where a common-law marriage is asserted; and an allegation that a party was not married does not thereby require a pleader to assume the burden of proof of non-marriage. 55 C.J.S. Marriage § 43 a, p. 887. A claim of common-law marriage is regarded with suspicion, and will be closely scrutinized. Thus, in order to establish a common-law marriage, all of the essential elements of such a relationship must be shown by clear, consistent and convincing evidence, especially must all of the essential elements of such a relationship be shown when one of the parties is dead; and such marriage must be proved by a preponderance. 55 C.J.S. Marriage § 45 b, pp. 911, 912. The elements and conditions necessary to establish the existence of a common-law marriage have been outlined by this court as: (1) intent and agreement in praesenti as to marriage on the part of both parties together with continuous cohabitation and public declaration that they are husband and wife; (2) the burden of proof is on the one asserting the claim; (3) all elements of relationship as to marriage must be shown to exist; (4) a claim of such marriage is regarded with suspicion, and will be closely scrutinized; (5) when one party is dead, the essential elements must be shown by clear, consistent and convincing evidence. In re Estate of Long, 251 Iowa 1042, 1047, 102 N.W.2d 76; Coleman v. Graves, 255 Iowa 396, 402, 403, 122 N.W.2d 853; In re Estate of Malli, 260 Iowa 252, 256, 149 N.W.2d 155."

III. Plaintiff maintains, however, where express agreement to be husband and wife is shown there need be no evidence of "holding-out" or public declaration, i. e., an agreement in words of the present tense, without more, will suffice.

It appears this court has never heretofore been squarely called upon to resolve the above contention.

Marriage has been characterized as a sui generis contractual relationship. See Beach v. Beach, 160 Iowa 346, 348, 141 N.W. 921 (1913); 52 Am.Jur.2d, Marriage, §§ 4–7; 55 C.J.S. Marriage § 1.

■ Although, as aforesaid, common-law marriages are recognized in this jurisdiction, one element essential to the proof of such relationship is a general and substantial "holding-out" or open declaration thereof to the public by both parties thereto. See In re Estate of Fisher, *supra*; In re Trope's Estate, 190 Okl. 453, 124 P.2d 733, 737 (1942); In re Manfredi's Estate, 399 Pa. 285, 159 A.2d 697, 701 (1960). In fact such "holding-out" or open declaration to the public has been said to be the acid test. See Damron v. Damron, 301 Ky. 636, 192 S.W.2d 741, 743–744 (1945).

In other words, there can be no secret common-law marriage. See In re Estate of DeWitte, 140 Ind.App. 114, 222 N.E.2d 285, 288 (1966). See also Anderson v. Anderson, 235 Ind. 113, 131 N.E.2d 301, 305–306 (1956); In re Dittman's Estate, 124 Ind. App. 198, 115 N.E.2d 125, 127 (1953); Schilling v. Parsons, 110 Ind.App. 52, 36 N.E.2d 958, 960–961 (1941); In re Estate of Soeder, 7 Ohio App.2d 271, 220 N.E.2d 547, 561–563 (1966); Quinton v. Webb, 207 Okl. 133, 248 P.2d 586, 587 (1952); In re Trope's Estate, 124 P.2d at 736–737; Walter v. Walter, 433 S.W.2d 183, 191, 194 (Tex.Civ.App.1968); Ex Parte Threet, 160 Tex. 482, 333 S.W.2d 361, 364 (1960).

Iowa has long been aligned with the above precept. Illustratively, at cost of some repetition, we said in the case of In re Estate of Fisher, 176 N.W.2d at 805:

"The elements and conditions necessary to establish the existence of a common-law marriage have been outlined by this court as: (1) *intent and agreement in praesenti* as to marriage *on the part of both parties together with* continuous cohabitation and *public declaration that they are husband and wife*; * * * (3) *all elements of relationship as to marriage must be shown to exist*; (4) *a claim*

*of such marriage is regarded with suspicion, and* will be closely scrutinized; (5) *when one party is dead, the essential elements must be shown by clear, consistent and convincing evidence.*" (emphasis supplied).

See also State v. Lawson, 165 N.W.2d 838, 839–840 (Iowa 1969).

And in Schilling v. Parsons, *supra*, 36 N.E.2d at 961, the court voiced this supportive rationale for the above stated rule:

"To hold that a common law marriage is established without public acknowledgment of the marriage status of the contracting parties where there is an unwitnessed oral agreement would open the door to perjury and fraud, deny the parties themselves the protection to which they are each entitled, and jeopardize the sanctity of the basic institution of all civilized society, the home."

■ Mindful of the foregoing we now hold that where, as here, the parties are shown to have entered into an *in praesenti* agreement to live as husband and wife and a party thereto has since died, any person claiming existence of a common-law marriage must, in order to succeed, additionally establish by clear, consistent and convincing evidence all elements thereof, including a general and substantial "holding-out" or open declaration to the public of such relationship by both parties thereto. See In re Estate of Fisher, *supra*; In re Dittman's Estate, 115 N.E.2d at 127.

To the extent Love v. Love, 185 Iowa 930, 931–932, 171 N.W. 257 (1919) may be inconsistent with the above holding it is hereby overruled.

■ Trial court found Martha Pitkin fatally failed to show by clear, consistent and convincing evidence the requisite "holding-out" or open declaration to the public of a common-law marriage with Otto T. Dallman, deceased.

Therefore, Martha could here prevail only if this court found she had established ex-

istence of the asserted common-law marriage as a matter of law. See State v. Arnold, 225 N.W.2d 120, 121 (Iowa 1975). We hold, however, Martha did not so prove such marriage and there exists no basis upon which to now interfere with trial court's finding on the instantly involved issue.

By the same token we further hold, trial court's denial of Martha Pitkin's claim to right of a dower interest in the estate of Otto T. Dallman, deceased, must stand.

Affirmed.