**IN THE COURT OF APPEALS OF IOWA**

No. 24-1125
Filed April 23, 2025

**IN RE THE MARRIAGE OF KAROL A. BANKS WELLS
AND LYLE E. WELLS**

**Upon the Petition of
KAROL A. BANKS WELLS,**
        Petitioner-Appellee,

**And Concerning
LYLE E. WELLS,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Appanoose County, Michael Carpenter, Judge.

        Lyle Wells appeals the decree dissolving his marriage to Karol Wells.

**AFFIRMED AND REMANDED WITH DIRECTIONS.**

        Mark R. Hinshaw (argued) of The Law Offices of Mark R. Hinshaw, West Des Moines, for appellant.

        Heather M. Simplot (argued) of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellee.

        Heard at oral argument by Tabor, C.J., Langholz, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**DOYLE, Senior Judge.**

Lyle (Sonny) Wells appeals the decree dissolving his marriage to Karol Wells. The only question on appeal is whether Karol proved the existence of a common law marriage. Because a preponderance of the evidence supports the existence of a common law marriage, we affirm the decree dissolving the marriage but remand to the district court to determine a reasonable award of appellate attorney fees.

**I. Background Facts and Proceedings.**

In December 2012, Sonny and Karol married during a formal ceremony. At the time, Lyle's net worth was almost $1,000,000 while Karol had no property of significant value and no debt. So at Sonny's insistence, Karol signed a prenuptial agreement before the ceremony. The decree dissolving the marriage was entered in December 2013.

Although the parties divorced, Karol testified that she and Sonny "were never apart," so she viewed the dissolution decree as "just a piece of paper." She claims that in March 2014, Sonny proposed buying a home for them both. She recalled looking at a house together in August and Sonny telling her, "If that's the one you want, that's the one you'll get." Sonny made an offer on the house, and the sale closed in October 2014. Only Sonny's name is listed on the deed, and he testified that Karol never contributed to the mortgage payments.

In Karol's view, she and Sonny were married by the time Sonny bought the new home. Although Karol never changed her legal name,[1] she sometimes went by Karol Banks-Wells or Karol Wells. When Sonny bought the new house, Karol bought a large landscaping rock with "Sonny and Karol Wells" written on it and placed it beside the sidewalk that led to the backdoor. The rock was clearly visible to anyone approaching the home; according to Karol, "You couldn't miss it." She claims that Sonny never objected to the rock and referred to her as his wife. Sonny's grandchildren called her both "Grandma" and "Grandma Karol."

Sonny claims that he never intended to remarry Karol or told anyone they were married after their 2013 divorce. Sonny also denies that he and Karol had a relationship after their divorce. He testified that he only allowed Karol to live with him because he "felt sorry for her." Sonny also admits he added Karol to his checking account but claimed he did so "just so she could pay the bills with my money."

For tax years 2014 through 2016, Sonny filed tax returns as "single." But starting in 2017, Sonny and Karol filed as "married filing jointly." In May 2017, Sonny signed a financial statement that listed his marital status as married. That same month, Sonny bought a life insurance policy that designated Karol as his beneficiary.

In May 2022, Karol petitioned to dissolve her marriage to Sonny, claiming that a common law marriage began in 2014. Sonny denied the existence of a

---

[1] Karol did not change her name when she and Lyle married in December 2012, so there was no need for her to change her name when they divorced one year later.

common law marriage. In a thorough and well-reasoned ruling, the district court determined that the evidence shows a common law marriage began in 2017. The court dissolved the marriage and divided the parties' assets and debts. It declined to award Karol spousal support but ordered Sonny to pay $4000 of Karol's trial attorney fees. On appeal, Sonny challenges the existence of a common law marriage.

**II. Scope of Review.**

A divorce action is an equitable proceeding. Iowa Code § 598.3 (2022). Our review is de novo. *See* Iowa R. App. P. 6.907 ("In equity cases review is de novo."); *In re Marriage of Martin*, 681 N.W.2d 612, 616 (Iowa 2004) ("We review claims of a common law marriage de novo."). We give weight to the district court's fact findings, especially those involving determinations of witness credibility, but are not bound by them. *See* Iowa R. App. P. 6.904(3)(g).

**III. Discussion.**

The only issue before this court is whether Karol proved the existence of a common law marriage by a preponderance of the evidence. *See Martin*, 681 N.W.2d at 617 (stating that the party claiming the existence of a common law marriage bears the burden of proof); *In re Marriage of Winegard*, 257 N.W.2d 609, 615 (Iowa 1977) (considering whether a preponderance of the evidence showed a common law marriage). The existence of a common law marriage depends on proof of three elements: "(1) present intent and agreement to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife." *Martin*, 681 N.W.2d at 617 (cleaned up). "Proof of cohabitation, as well as evidence of conduct and general repute in the community

where the parties reside, tends to strengthen the showing of present agreement to be husband and wife, as well as bearing upon the question of intent." *In re Marriage of Gebhardt*, 426 N.W.2d 651, 652 (Iowa Ct. App. 1988).

**A. Present intent and agreement to be married.**

We begin by considering whether Karol has proved the requisite intent and agreement to be married. A present intent and agreement to be married "reflects the contractual nature of marriage." *Martin*, 681 N.W.2d 617. It does not require an express agreement. *Id.* If "one party intends present marriage and the conduct of the other party reflects the same intent," an implicit agreement may exist to support a common law marriage. *Id.* Evidence supporting a present intent and agreement includes the parties' conduct and general reputation in the community. *Id.*

The parties gave conflicting testimony on intent. The district court found clear evidence that Karol intended to be married beginning in 2014. But noting that "it takes two to tango," the court found Sonny's purchase of a home in his name alone and filing tax returns a single person from 2014 through 2016 belied an intent to remarry. The court was also skeptical that Sonny would be willing to remarry Karol without the protection of a prenuptial agreement just eight months after they divorced.

Although the court found the parties' intentions were mismatched initially, it did not end its inquiry there. Instead, it found Sonny's actions in May 2017 and beyond show that he "capitulated to Karol's longstanding assertion of marriage and decided that he and Karol were married after all." That month, Sonny signed a financial statement that stated he was married. Shortly after, he bought a life

insurance policy and named Karol as his beneficiary. Sonny also filed his taxes as "married filing jointly" beginning with his 2017 return and for each year after through 2021. We agree that on this basis, a preponderance of evidence shows Sonny considered he and Karol married starting in May 2017.

**B. Cohabitation.**

We turn then to the question of continuous cohabitation, which provides circumstantial evidence of a common law marriage but cannot alone establish a common law marriage. *Id.* There is no time requirement for cohabitation to show common law marriage. *Id.* "Instead, it is important for the cohabitation to be tied to the present intent and agreement to be married." *Id.*

The evidence shows the parties cohabited beginning in 2014. Although they disagreed as to their marital status until 2017, the evidence of their continuous cohabitation supports finding a common law marriage.

**C. Public declaration or holding out to the public.**

Finally, we consider whether Karol showed that she and Sonny publicly declared or held themselves out as married, which is considered the best evidence of a common law marriage. *See id.* at 618. "In other words, there can be no secret common-law marriage." *In re Est. of Dallman*, 228 N.W.2d 187, 190 (Iowa 1975). But there is no requirement that all public declarations are "entirely consistent with marriage. A substantial holding out to the public in general is sufficient." *Martin*, 681 N.W.2d at 618 (internal citations omitted).

Karol showed by a preponderance of the evidence that she and Sonny publicly declared or held themselves out as married. The evidence shows that Karol placed a large rock that read "Sonny and Karol Wells" by the sidewalk leading

to their backdoor. More importantly, the evidence shows that the couple was viewed as married by family and friends. Despite Karol never legally changing her name, mail sent by family and friends from 2017 forward was addressed to "Sonny and Karol Wells" or "Mr. and Mrs. Lyle Wells." The district court also noted the obituary for Karol's father referred to her as "Karol Banks (Sonny) Wells." Sonny's grandchildren referred to Karol as "Grandma" or "Grandma Karol." We agree that this evidence shows that Sonny and Karol held themselves out as married.

**D. Conclusion.**

In support of his claim that no common law marriage existed, Sonny cites three cases in which the appellate courts found that the parties claiming the existence of a common law marriage failed to meet their burden of proof: *Martin*, 681 N.W.2d at 615, *In re Marriage of Derryberry*, No. 13-0408, 2014 WL 2884760, at *1 (Iowa Ct. App. June 25, 2014), and *In re Marriage of Nichols & Mauro*, No. 23-0767, 2024 WL 697752, at *1 (Iowa Ct. App. Feb. 21, 2024).

In *Martin*, as here, a couple divorced but continued living together in a home purchased by one party while often presenting themselves to the community as husband and wife. 681 N.W.2d at 615–16. Although they consistently filed separate tax returns and maintained separate bank accounts, they each contributed to household expenses. *Id.* at 615. In some documents, one party declared himself married while indicating he was single in others. *Id.* at 615–16. The court found, "The fluctuating status of their relationship was, from the beginning, largely based on personal convenience or benefit, which is inconsistent with the concept of marriage." *Id.* at 618. Noting that one party refused the other's request to remarry four years into this arrangement, the supreme court ultimately

concluded that there was insufficient evidence establishing a common law marriage. *Id.*

In *Derryberry*, this court considered whether a couple that was twice married and divorced entered a common law marriage while cohabiting years later. 2014 WL 2884760, at *1–2. Although the parties cohabited, we found conflicting evidence of the other elements because they listed their status as married or single depending on the circumstance and benefit. *Id.* at *3–6. We disregarded evidence of one party's family calling the other party a stepparent, grandparent, or "in-law" because those identifiers resulted from the two prior marriages, not the parties' intent to remarry. *Id.* at *4.

Recently, this court rejected a claim of common law marriage in *Nichols*, 2024 WL 697752, at *1. Although the parties filed tax returns as "married filing jointly" for twenty years, we found "the parties' shifting assertions of married and single status in various contexts reflect an intent to serve their personal convenience or financial benefit—not a present intent and agreement to be married." *Id.*

The evidence before us is distinguishable from the cases cited by Sonny. While those cases involved conflicting evidence about marital status, the evidence here shows that conflict largely resolved in 2017, when the district court determined that Sonny revised his assessment of their relationship. Sonny's testimony is largely silent about the nature of his relationship with Karol after their 2013 divorce apart from testimony that disparaged her character. But his claim that he allowed Karol to live with him and did not kick her out only because he felt

sorry for her is not credible. The greater evidence supports finding a common law marriage starting in 2017.

Because Karol proved each element of a common law marriage by a preponderance of the evidence, we affirm.

**IV. Appellate Attorney Fees.**

Finally, Karol requests an award of her appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). In deciding whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and the merits of the appeal. *See id.* Based on these factors, we grant Karol's request for appellate attorney fees incurred in successfully defending the dissolution decree. Because Karol did not submit an attorney fee affidavit in support of her request, we remand to the district court to decide a reasonable amount of appellate attorney fees to award. *See In re Marriage of Samuels*, 15 N.W.3d 801, 809 (Iowa Ct. App. 2024).

**AFFIRMED AND REMANDED WITH DIRECTIONS.**